**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| BLAINE FRANKLIN SHAW, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-1343-KHV |
| | ) | |
| ERIK SMITH, in his official capacity as | ) | |
| the Superintendent of the Kansas Highway | ) | |
| Patrol, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| MARK ERICH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 20-1067-KHV |
| | ) | |
| ERIK SMITH, in his official capacity as | ) | |
| the Superintendent of the Kansas Highway | ) | |
| Patrol, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

On July 21, 2023, the Court held that in violation of the Fourth Amendment and <u>Vasquez</u>

<u>v. Lewis</u>, 834 F.3d 1132 (10th Cir. 2016), defendant was responsible for a policy or practice which

unlawfully detains motorists in Kansas (especially out-of-state motorists) without reasonable

suspicion or consent, based on out-of-state residency and—to more than a minimal extent—based

on travel plans that are not implausible or inherently contradictory.  <u>Memorandum And Order</u>

(Doc. #539) at 75.  It also held that in violation of the Fourth Amendment, defendant was

responsible for a policy or practice of using the Kansas Two-Step to extend traffic stops of

motorists in Kansas without reasonable suspicion and without the motorists' knowing, intelligent

and voluntary consent.[1]  Id.  To remedy these violations, the Court ordered that the parties show cause why it should not enter the injunction outlined in the order.  Id. at 76–79.

The parties responded on August 3, 21 and 28, 2023.  On August 30, 2023, the Court preliminarily overruled defendant's general objections that (1) injunctive relief should be denied because plaintiffs failed to establish the absence of an adequate legal remedy for any potential future violation of their Fourth Amendment rights during a traffic stop; (2) the Court did not properly apply the test for irreparable harm; and (3) the proposed injunctive relief was "unduly burdensome" and not "narrowly tailored" to the violations at issue here.  Order (Doc. #550) at 2. This order more fully sets forth the Court's reasoning in overruling the objections to the injunction stated in Defendant's Response To The Order To Show Cause Why The Court Should Not Enter The Proposed Injunction (Doc. #547) filed August 21, 2023.[2]  In addition, this order resolves the parties' competing arguments about the scope of the injunction, the documentation requirements for vehicle stops and the supervisor training requirements.  See Plaintiffs' Position On Unresolved Issues On The Proposed Injunction (Doc. #560) filed September 21, 2023; Defendant's Supplemental Brief On The Scope Of The Proposed Injunction (Doc. #561) filed September 21, 2023.

---

[1]      Because Jones retired on July 1, 2023, the Court directed the parties to show cause in writing why it should not substitute Erik Smith, the current Superintendent of the KHP, as defendant in this case.  All parties agreed to the substitution and on August 8, 2023, the Court ordered substitution under Rule 25(d), Fed. R. Civ. P.  Order (Doc. #545); see Hafer v. Melo, 502 U.S. 21, 25 (1991) (when official leaves office, successor automatically assumes his position in official capacity litigation).

[2]      Many of defendant's objections simply rehash arguments that he made in his Rule 52 motion.  See Memorandum In Support Of Motion For Judgment (Doc. #515) filed May 9, 2023.  In this regard, the Court incorporates by reference its Memorandum And Order (Doc. #539), which addressed those arguments.

## I.    Scope Of The Injunction

Even though the Court never certified a class in this case, defendant stipulated that any injunctive relief awarded to the named plaintiffs would benefit all "putative class members without the certification of a class," i.e. "any declaratory or injunctive relief which has been demanded would run to all persons similarly situated."   Response To Court's Show Cause Order Concerning Class Certification (Doc. #166) filed May 20, 2021 at 2.   Because of defendant's stipulation, plaintiffs agreed not to seek class certification for its proposed class, which its motion for class certification defined as follows:   "all persons in the United States who travelled in Kansas on I-70, I-35, U.S. Route 54 or U.S. Route 36 as a motorist or passenger, were actually or appeared to be driving to or from Colorado, in a vehicle with license plates from a state other than Kansas, who were stopped, detained by the KHP and subjected to searches of their vehicles or persons by a canine but were not subsequently convicted of a crime as a result of the stop, detainment, arrest, or search by the KHP."[3]   Plaintiffs' Motion For Class Certification (Doc. #80) filed November 9, 2020 at 2.   Because defendant's stipulation was limited to the putative class, the Court limits the scope of injunctive relief to plaintiffs' proposed class at the time of the stipulation.[4]

Plaintiffs argue that because the Court overruled as moot their motion for class certification, that "outdated definition of a proposed class" should no longer govern.   Plaintiffs'

_____

[3]        The proposed class excluded defendants and their affiliates, parents, subsidiaries, employees, officers, agents and directors.   Id.   It also excluded judicial officers presiding over this matter and members of their immediate families and judicial staff.   Id.

[4]        Plaintiffs are the masters of their own class definition.   Evans v. Brigham Young Univ., No. 22-4050, 2023 WL 3262012, at *6 (10th Cir. May 5, 2023) (plaintiff cannot escape parameters of his own chosen class definition) (citing Thornley v. Clearview AI, Inc., 984 F.3d 1241, 1248 (7th Cir. 2021) (emphasizing that plaintiff controls own class definition)).

Position On Unresolved Issues On The Proposed Injunction (Doc. #560) at 3. Even though the Court did not formally certify a class, defendant's stipulation included the phrases "putative class members" and "all persons similarly situated." Response To Court's Show Cause Order Concerning Class Certification (Doc. #166) at 2 (if Court grants equitable relief to named plaintiffs, such relief would benefit "putative class members without the certification of a class;" in other words, "any declaratory or injunctive relief which has been demanded would run to all persons similarly situated"). Plaintiffs do not explain how absent reference to their proposed class definition, the Court can determine the meaning of defendant's stipulation. Plaintiffs note that defendant broadly stipulated that any injunctive orders would bind "all Kansas Highway Patrol troopers." Id. at 2–3. The fact that an injunction would bind all KHP troopers does not mean that the scope of any such injunction would apply beyond the putative class, i.e. individuals who "were actually or appeared to be driving to or from Colorado, in a vehicle with license plates from a state other than Kansas." Plaintiffs' Motion For Class Certification (Doc. #80) at 2.[5]

---

[5]    In addition to defendant's stipulation and plaintiffs' proposed class definition, the Court notes that plaintiffs' Proposed Findings Of Fact And Conclusions Of Law (Doc. #529) filed May 20, 2023, support limiting the scope of injunctive relief to motorists who were or appeared to be driving to Colorado in a vehicle with license plates from a state other than Kansas. See, e.g., Proposed Findings Of Fact And Conclusions Of Law (Doc. #529) at 45–55 (KHP targets out-of-state drivers for traffic stops and roadside detentions for canine sniffs); id. at 60 (more than hypothetical possibility that KHP will target "Plaintiffs (as actual or perceived out-of-state drivers)" for pretextual stops and detentions); id. at 48 (noting "differential traffic enforcement practices for Kansas and out-of-state motorists"); id. at 81 (KHP continues to train troopers that "out-of-state license plates" can be meaningful factor in reasonable suspicion under totality of circumstances); id. at 113–14 (citing Vasquez and need to abandon pretense that "state citizenship" is permissible basis to justify detention and search of "out-of-state motorists"); id. at 116–17 (hypothetical risk of future injury because in part (1) plaintiffs "still travel through to and from Colorado and other states, and that they use Kansas highways to do so," (2) KHP stops "out-of-state drivers" at a highly disproportionate rate and (3) once stopped, KHP detains "out-of-state drivers" for canine sniffs at disproportionate rates); id. at 117 (ongoing violations because KHP

(continued. . .)

-4-

As to the scope of the injunction, the Court also notes that at the time that defendant entered the stipulation, plaintiffs demanded injunctive relief which is broader than the relief that the Court finds is appropriate.   Specifically, plaintiffs requested the following injunctive relief:

i.      Enjoining the Defendant Jones from continuing the policy, practice, and custom of prolonging detentions for canine searches without reasonable suspicion of criminal activity;

ii.     Enjoining the Defendant Jones from continuing the policy, practice, and custom of targeting drivers with out-of-state plates in violation of the right to travel protected by Article IV of and the Fourteenth Amendment to the United States Constitution;

iii.    Requiring Defendant Jones to implement improved policies and programs with respect to training, supervision, monitoring, and discipline that will eliminate the policy, practice, pattern, and custom of suspicionless detentions and seizures;

iv.     Requiring Defendant Jones to implement appropriate measures for supervision and discipline of KHP troopers who conduct suspicionless detentions and seizures;

v.      Requiring Defendant Jones to implement appropriate measures to ensure that KHP troopers document:

1. all canine drug searches, including the location, the basis for each such search, the residency and demographics—including the state issuing the license

---

[5](. . .continued)

targets "out-of-state drivers" for traffic stops and detains those drivers without reasonable suspicion); id. at 118 (same); id. at 138–41 (KHP disproportionately targets out-of-state drivers).

The Court previously held—without distinguishing between in-state and out-of-state motorists—that defendant was responsible for a policy or practice of using the Kansas Two-Step to extend traffic stops of motorists without reasonable suspicion and without the motorists' knowing, intelligent and voluntary consent.   In this regard, declarative relief as to KHP's unlawful use of the Kansas Two-Step cannot be meaningfully restricted to out-of-state motorists.   In other words, regardless why a KHP trooper detains a motorist, the KHP use of the Kansas Two-Step to extend traffic stops of motorists without reasonable suspicion and without the motorists' knowing, intelligent and voluntary consent is unlawful.   As to injunctive relief related to the Kansas Two-Step, however, the Court limits such relief to the putative class, i.e. individuals who "were actually or appeared to be driving to or from Colorado, in a vehicle with license plates from a state other than Kansas."   Plaintiffs' Motion For Class Certification (Doc. #80) at 2.

plate on the vehicle—of each individual stopped, regardless of whether the encounter is followed by the use of force, consent search, citation, warning or arrest and,

       2. all citations and arrests, including the location, the basis for each such search, the residency and demographics—including the state issuing the license plate on the vehicle—of each individual stopped, issued and or conducted as a result of a canine drug search, and to do so in sufficient detail as to permit supervisory review for compliance with Article IV and the Fourth and Fourteenth Amendments;

    vi.    Requiring Defendant Jones to implement appropriate measures to ensure that documentation of all canine drug searches is retained in a single, up-to-date computerized database;

    vii.    Requiring Defendant Jones to make publicly available data on all canine drug searches conducted by the KHP on a semiannual basis, including information on location, the basis for each such search, the residency and demographics of each individual stopped;

    viii.    Requiring Defendant Jones to monitor and audit canine drug search policies, practices, and customs, to ensure that such searches comport with constitutional and statutory requirements, including by, among other things, periodically reviewing forms documenting these searches and analyzing data on such searches.

First Amended Complaint – Class Action (Doc. #7) filed January 30, 2020 at 29–30.

## II.    Irreparable Harm Unless Injunction Is Issued

Irreparable injury and the inadequacy of legal remedies are the bases for federal injunctive relief.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).  Harm is "irreparable" if plaintiffs can show a "significant risk that he or she will experience harm that cannot be compensated after the fact by money damages."  Fish v. Kobach, 840 F.3d 710, 751 (10th Cir. 2016) (quoting RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009)).  Adequate legal remedies foreclose injunctive relief.  N. Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1306 (1984).

"When an alleged constitutional right is involved, most courts hold that no further showing

of irreparable injury is necessary."   <u>Fish</u>, 840 F.3d at 752 (quoting <u>Kikumura v. Hurley</u>, 242 F.3d 950, 963 (10th Cir. 2001)).   Accordingly, while the Court must engage in its traditional equitable inquiry as to the presence of irreparable harm in such a context, "the violation of a constitutional right must weigh heavily in that analysis."   <u>Id.</u>

Defendant argues that plaintiffs have failed to establish that legal remedies will not adequately compensate them for any potential future violation of Fourth Amendment rights. <u>Defendant's Response To The Order To Show Cause Why The Court Should Not Enter The Proposed Injunction</u> (Doc. #547) at 2.   Even if a violation of plaintiffs' constitutional rights would give rise to discrete injuries that could be redressed through money damages, however, the threatened or ongoing violation of constitutional rights is sufficient to establish irreparable harm for purposes of injunctive relief.   As the Court previously pointed out, "[i]ndividual lawsuits against KHP troopers have not persuaded and evidently will not persuade the KHP to adopt permanent and comprehensive changes that are necessary to protect plaintiffs and similarly situated motorists from constitutional violations in the future."   <u>Memorandum And Order</u> (Doc. #539) at 67-68; <u>see also</u> <u>id.</u> at 60 n.60 (because of qualified immunity, damage suits under § 1983 are especially unavailing in most cases).   Moreover, in this case, defendant avoided a trial of Section 1983 claims for an entire class because he agreed that any injunctive relief awarded to the named plaintiffs would benefit all "putative class members without the certification of a class," <u>i.e.</u> "any declaratory or injunctive relief which has been demanded would run to all persons similarly situated."   <u>Response To Court's Show Cause Order Concerning Class Certification</u> (Doc. #166) at 2.   The Court therefore overrules defendant's objection that plaintiffs have adequate legal remedies for the threat of future constitutional violations.

Defendant argues that this Court's finding of irreparable injury violates the well-established principles of comity and federalism because the proposed injunction requires continuous federal court supervision of a state law enforcement agency.   Defendant's Response (Doc. #547) at 3–5.   To obtain injunctive relief against a state law enforcement agency, a party must show the traditional prerequisite of irreparable injury.   City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).   "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."   O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974).   In addition, absent "irreparable injury which is both great and immediate," the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions by federal courts against state officers engaged in the administration of its state's criminal laws.   Id. at 499.[6]   In tailoring remedies, the preferred course is to preserve as much discretion for state administrators as possible, but "where

---

[6]      Neither Lyons nor O'Shea delineate what must be shown to make an irreparable injury "great and immediate."   In O'Shea, the Supreme Court used the "great and immediate" language in the context of addressing an issue of abstention under Younger v. Harris, 401 U.S. 37 (1971).   O'Shea, 414 U.S. at 678 (quoting Younger, 401 U.S. at 46).   Under Younger, federal courts must abstain from exercising jurisdiction to interfere with state proceedings if "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."   Winn v. Cook, 945 F.3d 1253, 1258 (10th Cir. 2019) (citation omitted).   When Younger's three requirements are met, abstention is mandatory unless one of three exceptions applies: the prosecution was "(1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of 'irreparable injury' both *great and immediate*."   Phelps v. Hamilton, 59 F.3d 1058, 1063–64 (10th Cir. 1995) (emphasis added).

    It appears that any heightened requirement for plaintiffs to establish "great and immediate" irreparable injury applies to injunctions that interfere with ongoing or pending state criminal prosecutions where Younger is potentially implicated, rather than injunctions that impact law enforcement officer behavior in future investigations.

constitutional rights have been violated, comity does not require, or even permit, a federal court to countenance those violations."   Duran, 678 F. Supp. at 847.

The Court previously outlined evidence of the highly disproportionate rates at which the KHP stops and detains out-of-state drivers based on inappropriate criteria, the KHP's routinely improper use of the Kansas Two-Step and plaintiffs' testimony that they continue to travel through Kansas on Kansas highways and KHP troopers will detain them in the future.[7]   Memorandum And Order (Doc. #539) at 27, 57–58.   Unlike Lyons and O'Shea, plaintiffs here have shown that they and similarly situated individuals are at risk of recurring constitutional violations because they are simply traveling in a vehicle with an out-of-state license plate on Interstate 70 in Kansas. Cf. Lyons, 461 U.S. at 105–06 (to prevail on claim for injunctive relief against police use of chokehold, plaintiff would have had "to allege that he would have another encounter with the police" and that either (1) "he would illegally resist arrest or detention" or (2) "the officers would disobey their instructions and again render him unconscious without any provocation"); O'Shea, 414 U.S. at 496 (no case or controversy because threat to plaintiffs was not "sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses").

The likelihood that a specific plaintiff or similarly situated individual will be stopped and subject to an extended encounter based on a trooper's coercive tactics may not be high, but KHP's continued, routine use of such tactics makes it sufficiently likely that KHP again will violate the constitutional rights of plaintiffs or similarly situated individuals during traffic stops.   Ortega-

---

[7]   Contrary to defendant's objection, the Court has not assumed—without evidence— that KHP routinely engages in "unconstitutional policing."

Melendres v. Arpaio (Melendres I), 836 F. Supp. 2d 959, 979 (D. Ariz. 2011) ("The likelihood that any particular named Plaintiff will again be stopped in the same way may not be high. However, if MCSO detains people, as they claim a right to do, without reasonable suspicion that they have violated essential elements of a criminal law—either state or federal—exposure to that policy is both itself an ongoing harm and evidence that there is 'sufficient likelihood' that Plaintiffs' rights will be violated again." (citing Lyons, 461 U.S. at 111)), aff'd sub nom. Melendres v. Arpaio (Melendres II), 695 F.3d 990 (9th Cir. 2012).   The Court therefore overrules defendant's objection that plaintiffs have not established a risk of irreparable harm.

## III.   Objections That Injunction Is Unduly Burdensome And Not Narrowly Tailored

The Court preliminarily overruled defendant's "objections that the proposed injunctive relief is 'unduly burdensome' or is not 'narrowly tailored' to the violations at issue here."[8]   Order (Doc. #550) at 2.   As explained, "[d]efendant has not proposed any alternatives which would be less burdensome, or more narrowly tailored, yet achieve substantially the same goals."   Id.   The Court therefore "cannot properly evaluate whether any particular burden is 'undue' in light of the constitutional principles which must be vindicated in this case."   Id.

In addition, as to defendant's objections about the purported burdens of the injunction, he offers no evidence to support the assertions that the injunction would "impair troopers ability to

---

[8]      Specifically, defendant objected that the scope of injunction is too broad because it places the Court (1) in the position of micromanaging the KHP as to traffic stops, documentation of such stops, personnel and works assignments, work schedules, record creation and retention, internal reporting requirements and annual training requirements and (2) acting through the special master, in the position of reviewing virtually every traffic stop made by KHP.   Defendant's Response (Doc. #547) at 5–6.   Defendant also objected that it is "overkill" to require that troopers inform individuals, verbally or in writing, that they have the right to refuse to consent to a search and, if consent is given, they have the right to revoke it at any time.   Id. at 7.

do their job," would be a "logistical nightmare," and would require a "significant number of additional troopers and significant additional funding."   Defendant's Response (Doc. #547) at 7–8.   Likewise, defendant offers no evidence to support his assertions about the KHP's ability to increase its funding, its current staffing difficulties or its ability to pay the costs associated with a special master.[9]   See id. at 8 ("KHP lacks the ability to unilaterally increase its funding and is experiencing the same recruiting difficulties reported by many law enforcement agencies" and it cannot even "fill current vacancies, let alone the additional positions that would be required to comply with" Section V of the injunction); see id. at 10 ("requiring KHP to provide any and all information and data demanded by the special master and to participate in various outcome assessments, compliance reviews and audits will place an undue burden on an already understaffed agency" and no record evidence supports the conclusion that "KHP has sufficient funds to pay all fees, costs and expenses of the special master without diverting said funds from other legitimate law enforcement purposes").   Absent such evidence or specific proposals that are more narrowly tailored to remedy the constitutional violations, the Court overrules defendant's objections that the

---

[9]        To the extent defendant argues that the appointment of a special master or monitor is unduly burdensome, the Court has partially addressed this objection by modifying the proposed injunction so that instead of a special master, KHP reports directly—at least initially—to the Court. To the extent that a monitor or other expert is eventually required to ensure KHP compliance with the injunction, KHP will be liable for such expenses because they are necessary to implement the remedy for the agency's constitutional violations established in this case.   See, e.g., Melendres v. Arpaio, 2013 WL 5498218, at *31 (D. Ariz. Oct. 2, 2013) (defendants to pay reasonable fees and costs of monitor); Floyd v. City of New York, 959 F. Supp. 2d 668, 678 (S.D.N.Y. 2013) (City to pay reasonable costs and fees of monitor, his staff and experts he retains).

        Likewise, to the extent that defendant objects to increased staffing costs, the Court has partially addressed this objection by modifying the proposed injunction to substitute a supervisor training requirement for the prior proposed requirement that all supervisors work the same shifts and hours as the troopers they supervise.   See infra text, Part V.

injunction is unduly burdensome and overly broad.

Defendant argues that the injunction requires KHP troopers to take steps beyond what is legally required to obtain an individual's voluntary consent to search.  Defendant's Response (Doc. #547) at 6–7.  To be sure, to obtain voluntary consent, a law enforcement officer is not required to affirmatively inform an individual, verbally or in writing, that he or she has the right to refuse to consent to a search and that if consent is given, that he or she has the right to revoke it at any time.[10]  Even so, the Court has broad remedial powers to craft injunctive relief to remedy constitutional violations.  Milliken v. Bradley, 433 U.S. 267, 281 (1977).  Once a constitutional violation is established, remedial decrees may require actions that the Constitution does not independently require if those actions are necessary to correct constitutional deficiencies.  Duran v. Carruthers, 678 F. Supp. 839, 847 (D.N.M. 1988) (citing Green v. Cnty. Sch. Bd., 391 U.S. 430 (1968), Milliken, supra, and Gilmore v. City of Montgomery, 417 U.S. 556 (1974)), aff'd, 885 F.2d 1485 (10th Cir. 1989).  Courts order injunctive relief not simply to prevent isolated instances of misconduct, but to remove the threat to constitutional values when a state or local law enforcement agency suffers from a persistent pattern of police misconduct.  Allee v. Medrano, 416 U.S. 802, 815 (1974); Battle v. Anderson, 708 F.2d 1523, 1538 (10th Cir. 1983).   The Court must be sensitive to the state's interests, but it nevertheless must not shrink from its obligation to "enforce the constitutional rights of all persons."  Brown v. Plata, 563 U.S. 493, 511 (2011) (quoting Cruz v. Beto, 405 U.S. 319, 321 (1972)); see also Swann, 402 U.S. at 15 (if state

___

[10]    See Schneckloth v. Bustamonte, 412 U.S. 218, 232–33 (1973) (voluntary consent does not require knowledge of right to refuse consent); United States v. Ledesma, 447 F.3d 1307, 1315 (10th Cir. 2006) (by itself, officer failure to tell suspect she is free to leave does not make encounter nonconsensual); United States v. Bradford, 423 F.3d 1149, 1158 (10th Cir. 2005) (officer not required to tell suspect she does not have to answer questions or that she is free to go).

authorities fail in affirmative obligation to uphold federal law, judicial authority may be invoked).

As explained before, in violation of the Fourth Amendment, defendant is responsible for (1) a policy or practice which unlawfully detains motorists in Kansas (especially out-of-state motorists) without reasonable suspicion or consent, based on out-of-state residency and—to more than a minimal extent—based on travel plans that are not implausible or inherently contradictory and (2) a policy or practice of using the Kansas Two-Step to extend traffic stops without reasonable suspicion and without knowing, intelligent and voluntary consent of the motorists.   Memorandum And Order (Doc. #539) at 75.   Injunctive relief is necessary to remedy this pattern of trooper misconduct.   The Court therefore overrules defendant's objection that the injunction imposes requirements beyond what is constitutionally required.

Defendant objects that the injunction creates the potential for inconsistent decisions in civil and criminal matters as to whether a violation of the injunction is also a constitutional violation, but does not explain specifically how the injunction creates such a risk.   Defendant's Response (Doc. #547) at 5.   As explained elsewhere, the injunction is part of the remedy for past constitutional violations and an attempt to prevent future constitutional violations similar to the ones which plaintiffs established in this case.   A violation of the injunction (e.g. a trooper's failure to notify a motorist of the right to refuse consent) does not necessarily establish a constitutional violation.   Likewise, compliance with the injunction does not guarantee the absence of a constitutional violation.   Because the injunction does not necessarily result in a full constitutional inquiry or evidentiary hearing on individual traffic stops—as a court in a criminal matter may conduct for a suppression hearing—the risk of inconsistent decisions appears to be low.

**IV.      Documentation Requirements**

The Court proposed an injunction which would require KHP troopers to document "any stop in which a trooper detains a vehicle and its occupants to initiate inquiry into a traffic violation."   Memorandum And Order (Doc. #550) at 4 n.2.   Defendants argue that this requirement is overbroad because it requires documentation of virtually every traffic stop including when a motorist is not detained and without regard to whether the motorist receives a ticket, a written warning or a verbal warning.   Plaintiffs argue that the documentation requirement should apply to stops of both out-of-state and in-state motorists.

Even though the proposed injunction does not directly protect motorists with Kansas license plates involved in KHP traffic stops, documentation from all traffic stops including those of in-state motorists appears to be potentially useful to determine whether KHP has instituted adequate measures to protect the constitutional rights of motorists with out-of-state plates. Plaintiffs maintain that KHP already documents all traffic stops and that it could easily provide spreadsheets containing such data.   Defendant does not deny that it could provide the requested data, but states that KHP is reviewing to determine if it can "easily" do so.   Defendant's Reply To Plaintiffs' Position On Unresolved Issues Of The Proposed Injunction (Doc. #563) filed September 26, 2023 at 2.   Because documentation from all traffic stops has some relevance to the targeting of motorists with out-of-state license plates and defendant has not shown that providing the data is burdensome, the injunction will require KHP troopers to document "any stop in which a trooper detains a vehicle and its occupants to initiate inquiry into a traffic violation." Memorandum And Order (Doc. #550) at 4 n.2.   Because the KHP already documents all traffic stops, this order prevents it from ceasing to do so.

-14-

V.      **Supervisor Training**

The parties agree that supervisor training would accomplish the same purpose as the Court's proposed requirement that all supervisors work the same shifts and hours as the troopers they supervise.   The Court agrees and finds that a requirement for supervisor training shall be incorporated into the injunction, as follows:

> Within 30 days of the effective date of this Injunction, the KHP shall create, and present to Plaintiffs for approval, a revised training curriculum and testing protocol for all supervisors at the rank of Sergeant and above.   This curriculum shall address proper communication standards, how to monitor troopers' actions (including reviewing troopers' reports), deficiencies in troopers' conduct in the field and supervisors' obligations under this Injunction and the U.S. Constitution.   Within 45 days of the effective date of this Injunction, the parties shall meet and confer about any objections to the proposed curriculum and submit an agreed curriculum to the Court for approval.   Within 60 days of the approval of the curriculum, KHP shall provide all supervisors at least eight hours of training as described above. Beginning one year after the effective date of this Injunction, KHP shall provide all supervisors at least eight hours of annual in-service training on these topics.

> The KHP shall institute a testing protocol which satisfies the Court that each supervisor has mastered the required subjects.

**IT IS THEREFORE ORDERED that on or before November 9, 2023, the parties shall submit an agreed permanent injunction which is consistent with the Court's rulings on plaintiffs' request for injunctive relief.   In the event that the parties cannot agree on the form of the injunction, they shall file no later than 5:00 PM on November 9, 2023, the competing versions of the injunction and an agenda of any unresolved issues which the Court can address at the status conference on November 14, 2023 at 1:00 PM.**

Dated this 1st day of November, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-15-